## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 23-cr-000359 (TSC)** |
| **v.** | |
| **CAHLYL ROLLINS,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Cahlyl Rollins be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving an explosive device) and (f)(2)(A) (risk of flight) of the federal bail statute.   On July 2, 2023, Mr. Rollins lit and detonated four explosive devices at commercial buildings around the D.C. area.   He did so without any concern for the damage he would cause or the potential threat to human life.   Indeed, he placed at least two of these bombs within eyeshot of other human beings.   His chilling conduct alone would be grounds for detention.   But Mr. Rollins also has access to devices used to steal cars, obscure the identity of cars, firearms and thousands of rounds of ammunition.   Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure Mr. Rollins' appearance or the safety of our community.   For the following reasons, the Court should order Mr. Rollins detained pending trial.

### BACKGROUND

#### *The Instant Offense*

On July 2, 2023, between 3:53 and 4:44 AM, Mr. Rollins and accomplices placed and

detonated four explosive devices in Maryland and D.C. outside commercial buildings. Surveillance video, license-plate readers, and cell site location data reflect that Rollins traveled between those four locations in a metallic Acura model TL sedan with Maryland license plate 17971CK.   At each location, Rollins stepped out of the vehicle, ignited and then placed or tossed a homemade explosive device, before driving to the next location and ultimately fleeing.

### *The 3:53 AM Bombing at 5430 Silver Hill Road, District Heights, Maryland*

At approximately 3:53 AM, Mr. Rollins placed and detonated an explosive device outside of a Bank of America ATM at 5430 Silver Hill Road, District Heights Maryland, destroying the vestibule and structure surrounding the ATM.

*Figure 1*



The ATM was in a strip mall next to a beauty supply store, a grocery store, and a fast-food restaurant.   Surveillance video reflects that Mr. Rollins—dressed in black Croc-style shoes, white socks, black Nike sweatpants, a light or cream-colored hoodie, a black face mask and

black gloves approached the ATM prior to the bombing.

*Figure 2*



Mr. Rollins' hood is cinched to obscure his face.   In his hands, Mr. Rollins was carrying a red-and-white striped tube which appears to be a homemade explosive device.

*Figure 3*



Mr. Rollins placed the device, lit it, and walked away before it exploded.

### *The 4:30 AM Bombing at Truist Bank, 2360 Washington Place NE, Washington, D.C.*

Thirty-seven minutes later, at approximately at approximately 4:30 AM, Mr. Rollins placed and detonated a second device outside of a Truist Bank at 2360 Washington Place NE, destroying the vestibule and structure surrounding multiple ATMs.[1]

*Figure 4*



This block, next to the Rhode Island Avenue Metro Station, includes both commercial businesses on the first floor, as well as multiple apartment buildings.   Surveillance video reflects that Mr. Rollins—dressed exactly as he was when he placed the first bomb—stepped out of the passenger

---

[1] This location is approximately nine miles from the first bombing and, during normal traffic conditions at legal speeds it would take a car approximately thirty-five minutes to drive that distance.

seat of the metallic sedan and approached the bank.   He then placed a device consistent in appearance with the first bomb, lit it, and fled the area in the same sedan.

*Figures 5 and 6*





At the time of the bombing a woman was seated on the same block as the explosion.   The vehicle carrying Mr. Rollins passed this woman before he placed the explosive device.   She was fortunately not harmed.

### The 4:36 AM Bombing at the Nike Store at 700 H Street NE, Washington, D.C.

Six minutes later, at approximately 4:36 AM, a third device was placed and detonated outside of the Nike Store at 700 H Street NE, destroying the front vestibule.[2]

*Figure 7*



Surveillance video reflects that a metallic sedan approached the store, drove past it, made a U-turn, before stopping next to the store.   Mr. Rollins then stepped out of the vehicle, rounded the corner, ducked into the entryway of the store, and then ran back to the vehicle.

---

[2] This location is approximately 2.5 miles from the first bombing and, during normal traffic conditions at legal speeds it would take a car approximately fifteen minutes to drive that distance.   In the middle of the night with little traffic and at higher speeds it would take less time.

*Figures 8 and 9*



Shortly after, a device detonates, shattering windows in the store's vestibule.   Mr. Rollins climbed back into the car and the vehicle fled.

### *The 4:44 AM Bombing of the Safeway at 322 40th Street NW, Washington, D.C.*

Eight minutes later, at approximately 4:44 AM, a fourth device was placed and detonated outside of a Safeway at 322 40th Street NE.[3]

---

[3] This location is approximately 2.5 miles from the first bombing and, during normal traffic conditions at legal speeds it would take a car approximately ten minutes to drive that distance. In the middle of the night with little traffic and at higher speeds it would take less time.

7

*Figure 10*



Surveillance video reflects that Mr. Rollins approached the front of the Safeway, lit a device consistent in appearance with the other three devices, and tossed it into the entryway.

*Figures 11 and 12*





The device exploded damaging the entryway doors and fixtures.   Employees were present inside the store cleaning and preparing for the store to open.   Indeed, one employee was standing just on the other side of the vestibule at the time of the explosion.   Fortuitously, no one was harmed.

### *The Bombing Vehicle*

The metallic Acura sedan used in the bombing bore Maryland license plate 17971CK. That license plate was provided by the state of Maryland to a private company that is authorized to sell titling papers and license plates but has never been registered to a vehicle.   Despite concerted law enforcement efforts to locate the vehicle, the vehicle has not been seen since the morning of July 2, 2023.   Since the offense, this license plate has been placed on other vehicles, including a gray Dodge Durango that was used to rob an ATM from a 7-Eleven in Crofton, Maryland.[4]

---

[4] In that robbery, a crew that appeared to be trained or experienced used a mechanical tool to remove the money from the ATM before fleeing in the Durango.   The same group then drove to a 7-Eleven in Hyattsville, Maryland and robbed an ATM there in a similar manner.   A gray Dodge Durango with a different license plate was subsequently used in multiple similar robberies around the DMV area of ATMs.   In each, a crew of apparently trained individuals used mechanical or hydraulic tools to force open ATMs before fleeing.

### *The Explosive Devices*

*Figures 13 and 14*



ATF Certified Explosives Specialists identified and collected the remnants of the suspected explosive devices at each of the four bombing locations.   Analysis of the remnants indicates that similar devices exploded at each scene.   Based on their analysis of the remnants on scene, as well as reviewing the damage to each building and surveillance footage of the devices and their explosions, ATF specialists identified these devices as homemade carboard encased explosive devices.   Devices such as these are generally created by filling a cardboard or other tubing with potassium chloride or potassium chloride and aluminum.   These components are referred to colloquially as flash powder.   Flash powder is an explosive regulated by the ATF. Devices like these are not commercially manufactured or otherwise available for the public to purchase.   Such devices are often referred to as "quarter" or "half sticks," though they are not technically dynamite.   In their smallest form these devices are often referred to as M80s.   These

10

devices, however, appear significantly larger.   When ATF has recovered devices of similar size, they have contained approximately four pounds of flash powder.   The legal limit for possessing flash powder is fifty milligrams.[5]

### *The Identification of Mr. Rollins as the Bomber*

Law enforcement obtained search warrants for the cellular towers associated with the four bombing locations on the date and approximate times of the bombings.   A device associated with Mr. Rollins was one of just four devices that were all in the vicinity of three of the four bombing locations.[6]

Specifically, one of the devices was registered to an Apple account in the name "Cahlyl Rollins" with email "rollinsc2010@yahoo.com." Law enforcement subsequently received records from Apple for this account.   The account contained numerous photographs, including many "selfie-style" photographs of an individual who appears to be Cahlyl Rollins.

---

[5] 4 pounds of flash powder is equivalent to 1,814,368 milligrams.   In other words, these devices were likely around 36,000 times the legal limit.

[6] The only bombing location at which this device did not appear was at the Nike Store bombing location.   It is possible that given the relatively short amount of time the suspects spent at the Nike Store and given the relatively short distance between the Truist Bank Bombing, the Nike Store, and the Safeway, the device simply did not ping on towers servicing the Nike Store.

*Figures 15 and 16*



The account also contained many photographs of Mr. Rollins carrying firearms.

*Figure 17*



12

Additionally, the account included images of Mr. Rollin's driver's license and documents bearing his name.

*Figures 18 and 19*




The Apple account also reflected messages between Mr. Rollins' phone number and one of the other devices that was present at three of the four bombing locations.   For example, on July 2, 2023, after the bombings, Mr. Rollins received a text from the user of that device asking him to provide tools to remove the rims of an Acura.   An account associated with that other device contained numerous photographs of the bombing vehicle with the unregistered Maryland license plate affixed.

### *The September 29, 2023 Search Warrant of Mr. Rollins' Residence and Storage Unit*

In the course of this investigation, law enforcement became aware of a storage unit that was potentially linked to this offense, located at the Self-Storage Plus at 1325 Kenilworth Avenue, NE.   While the unit was registered under a different name, records reflect multiple

phone calls between Mr. Rollins and the listed owner's number.   Law enforcement obtained

access records and surveillance video for the storage unit.

The records and video reflect that on July 1, 2023, several hours before the bombing at

6:30 PM, Mr. Rollins accessed the storage unit.

*Figures 20 and 21*



At the time he accessed the unit, Mr. Rollins is wearing the same pants, socks, and shoes as the

individual who placed and ignited the explosive devices several hours later.

14

*Figures 22 and 23*



Surveillance video reflects that Mr. Rollins returned to the storage unit at approximately 9:00 AM on July 2, 2023, less than five hours after the last bomb was detonated.

Law enforcement conducted surveillance on locations associated with Mr. Rollins device. Law enforcement observed Mr. Rollins for multiple days accessing and remaining at a home at 1635 U Street Southeast.   Law enforcement also observed Mr. Rollins use a key to enter the residence.

On September 29, 2023, law enforcement executed a search warrant of that residence. Inside the home, law enforcement found Mr. Rollins who appeared to be staying in a living room of the residence.   Law enforcement found the device associated with Mr. Rollins as well as another device at three of the four bombing locations.   The second device had been smashed.

Additionally, law enforcement recovered a firearm on the porch, an extended magazine in the home, a bag of key fobs, a device that can be used for reprogramming key fobs to steal

vehicles, and a backpack of burglary tools including headlamps, handheld radios, and hand tools. A vehicle registered to Mr. Rollins was found outside.   That vehicle was fitted with a device that could extend a cover over the license plate to obscure it with the touch of a button.[7]   While Mr. Rollins waited outside during the search warrant, a law enforcement officer offered to provide him with shoes.   Rollins indicated that he had a bunch of shoes in the living room.   Among the shoes in the living room was a pair of black Crocs consistent with those used during the bombings.

Law enforcement also conducted a search of the storage unit which Mr. Rollins accessed before and after the bombings.   Law enforcement recovered thirty-eight license plates, thousands of rounds of different ammunition (weighing more than two-hundred pounds), and additional burglary tools.   Of the thirty-eight license plates, many were involved in other crimes in the area.

On October 12, 2023, Rollins was indicted on four separate counts for the Malicious Use of Explosive Materials in violation of 18 U.S.C. § 844(i).   Rollins was arrested on October 30, 2023.   An initial appearance was held before the Honorable Magistrate Zia M. Faruqui on October 31, 2023.   At that hearing, the Government indicated that it would seek Mr. Rollins' detention pending trial.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial.

---

[7] Mr. Rollins was arrested when he came to pick up his vehicle after it was searched.

18 U.S.C. § 3142(e).   "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"   *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

In determining whether any condition or combinations of conditions will assure the appearance of a defendant or safety of the community, the Court weighs four factors:   (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."   18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community or ensure Mr. Rollins appearance were he to be released.

## I.       **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

As an initial matter, the crimes for which Mr. Rollins has been indicted by a grand jury are incredibly serious.   Mr. Rollins faces a mandatory minimum of five years' imprisonment for each charge, and a maximum of twenty years' imprisonment for each charge.

Mr. Rollins set and detonated four explosive devices in Maryland and D.C. in a chilling and dangerous late-night escapade.   He did so without concern for the damage it would do to those businesses or the extreme threat to human life each device posed.

After planting the first bomb, and witnessing its destructive power, Mr. Rollins drove to Truist bank.   Rollins and his accomplice drove past the bank and turned back around.   As they did, they drove past a woman sitting on the sidewalk, their headlights illuminating her from just a car-length away.   Despite this, Mr. Rollins planted this bomb just down the block from this woman.   He did so despite the many businesses in the area which could have employees reporting to open for the day.   He did so despite the many residential apartments surrounding this bank. He planted and lit this bomb without hesitation for the property and lives he might destroy.

And he didn't stop there.   After watching this second device detonate and cause significant damage, Mr. Rollins and his accomplices drove to the Nike Store on H Street NE.   At that time, even at that hour, they passed multiple cars and people on the sidewalk.   Undeterred by the possibility of the loss of human life, Mr. Rollins planted and ignited a third device.

Mr. Rollins's rampage continued.   He and his accomplices drove to a Safeway.   The lights in that Safeway were illuminated because its employees were already at work inside the

18

store preparing it for customers.   At this final location, Mr. Rollins (apparently aware that there

were people inside) did not carefully place the device in front of the store.   Instead, Mr. Rollins

callously tossed it at the front vestibule after igniting it.   An employee was just inside the store

past the vestibule when the device exploded.   It is fortuitous that neither he nor any of the other

employees were injured.

It is difficult to imagine more reckless, callous, or dangerous conduct than what Mr. Rollins

engaged in on July 2, 2023.   The nature and circumstances of this offense weighs heavily in favor

of detention.

## II.    **The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of

detention.[8]   The Government's case against Mr. Rollins is very strong.

This is not a case that relies on a law enforcement identification or the possibly fleeting

memory of a witness.   It is a case built on cell-site location data and surveillance video

establishing that Mr. Rollins was the individual who planed these bombs.   A device associated

with Mr. Rollins—using his name, his email, with multiple pictures of him and his documents—

---

[8] While some judges in this Court have indicated that this factor should be given less weight, in
*United States v. Blackson*, following a thorough review of the text of § 3142 and decisions
analyzing this factor, Judge Howell found that "the weight of the evidence should not
automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL
1778194, at *8.   Instead, "the weight of the evidence against [a] defendant [should] be weighed
as all factors are—in accordance with the specific facts of this case—to determine whether
pretrial detention is appropriate."   *Id.* at *10.   In an unpublished opinion, the D.C. Circuit
affirmed Judge Howell's decision.   *United States v. Blackson*, No. 23-3020, 2023 WL 2663034
(D.C. Cir. Mar. 28, 2023).   The Second Circuit reached the same decision after a thorough and
careful analysis of the issue.   *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022).
This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than
any other factor.

was at the location of three of four of these bombings.   That alone is telling given the time of night, the distance between these locations, and the lack of any relationship between these locations.   Put differently, the odds of Mr. Rollins in the middle of the night traveling the exact same route as the bombers at the exact same time are impossibly miniscule.   The Government will prove that this device belonged to Mr. Rollins not just based on records from the device, but from his physical proximity to that device at the time his residence was searched, as well as his proximity to a second device that was at the location of three of four of the bombings.[9]

This cell-site location data is further corroborated by images of Mr. Rollins wearing the same clothing as the bomber just hours before the bombings.   A portion of that outfit was recovered at Mr. Rollins' residence and identified by Mr. Rollins as belonging to him.   It is also corroborated by messages exchanged between Mr. Rollins and another device at the location of three of four of the bombings discussing efforts to obscure the identity of the bombing vehicle.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."   *Blackson*, 2023 WL 1778194, at *10.   This is such a case, particularly given the significant penalties Mr. Rollins' faces.

**III.      The Defendant's History and Characteristics Merit Detention.**

Mr. Rollins' criminal history is admittedly limited.   On September 7, 2023, Mr. Rollins pled guilty to Reckless Driving and Attempt by Driver to Elude Uniform Police By Failing to

---

[9]  The Government also anticipates conducting a full analysis of the cell-site location data to establish patterns of travel consistent with Mr. Rollins' known locations.

Stop, and was sentenced to one year confinement suspended, and two years of supervised probation.   But based on the Government's investigation, this limited criminal history is not reflective of Mr. Rollins ongoing criminal conduct.

Mr. Rollins was found in a home containing a device that can be used to acquire the RFID code for car key fobs and reprogram other fobs with that code.   In other words, he was found with a device that is used to steal cars.   In the same home was a bag of key fobs, indicating that stealing vehicles is exactly the purpose of this device.   A gun was found on the porch, a magazine was found in the house, and a backpack of burglary tools was found in the living room where Rollins had been staying.   In Rollins' storage unit were thousands of rounds of ammunitions and thirty-eight license plates, many of which are associated with other criminal activity.   And Mr. Rollins' own vehicle was fitted with a device specifically designed to evade law enforcement by obscuring the car's license plate number.

These are not the types of items associated with a law-abiding citizen who is able to abide by the Court's conditions of release.   Indeed, Mr. Rollins was engaged in the charged offense while pending trial in his Reckless Driving Case, and in possession of these many items while on supervision.   This is particularly the case where Mr. Rollins represented to Pre-trial Services that he is unemployed.   The Court should be gravely concerned as to the uses Mr. Rollins makes of these many implements of crime, including thousands of rounds of ammunition.

## IV.   Mr. Rollins Presents a Danger to Our Community and a Risk of Flight

The fourth and final factor, danger to any person or the community posed by Mr. Rollins release, similarly weighs in favor of detention.

Mr. Rollins has access to sophisticated devices used to steal cars, tools used to obscure his

identity, and explosive devices.   He has no compulsion about using them.   Indeed, he used multiple of these explosive devices to destroy commercial buildings without regard to the damage or potential threat to human life.   He is now facing a mandatory minimum of twenty years' imprisonment for those offenses and is now aware that the Government is investigating his other criminal conduct.   There is little doubt that Mr. Rollins will use his experience if released to flee the jurisdiction and mask his identity.   Mr. Rollins presents a danger to our community and a risk of flight and should be detained pending trial.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Rollins pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:        */s/ Cameron A. Tepfer*
           Cameron A. Tepfer
           D.C. Bar No. 1660476
           Assistant United States Attorney
           601 D Street NW
           Washington, D.C. 20530
           202-258-3515
           Cameron.Tepfer@usdoj.gov