**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 23-cr-000359 (TSC)** |
| **v.** | |
| **GARRETT BRAGG,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Garrett Bragg be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving an explosive device) and (f)(2)(A) (risk of flight) of the federal bail statute.   On July 2, 2023, Mr. Bragg and his co-conspirators drove around detonating explosive devices at commercial buildings around the D.C. area.   They did so without any concern for the damage they would cause or the potential threat to human life.   Indeed, they placed at least two of these bombs within eyeshot of other human beings.   Bragg's chilling conduct alone would be grounds for detention. But Mr. Bragg also has access to devices used to steal cars, obscure the identity of cars, firearms and thousands of rounds of ammunition.   And he has a recent history of ignoring open warrants and intentionally and successfully evading law enforcement detection.   Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure Mr. Bragg's appearance or the safety of our community.   For the following reasons, the Court should order Mr. Bragg detained pending trial.

# BACKGROUND

### *The Instant Offense*

On July 2, 2023, between 3:53 and 4:44 AM, Mr. Bragg and his accomplices placed and detonated four explosive devices in Maryland and D.C. outside commercial buildings. Surveillance video, license-plate readers, and cell site location data reflect that Bragg traveled between those four locations in a metallic Acura model TL sedan with Maryland license plate 17971CK.   Images from Bragg's iCloud account indicates that this vehicle appears to have been his, suggesting he was the driver.   At each location, Bragg's co-defendant Rollins stepped out of the vehicle, ignited and then placed or tossed a homemade explosive device, before driving to the next location and ultimately fleeing.

### *The 3:53 AM Bombing at 5430 Silver Hill Road, District Heights, Maryland*

At approximately 3:53 AM, Bragg and Rollins placed and detonated an explosive device outside of a Bank of America ATM at 5430 Silver Hill Road, District Heights Maryland, destroying the vestibule and structure surrounding the ATM.

*Figure 1*



The ATM was in a strip mall next to a beauty supply store, a grocery store, and a fast-food restaurant.   Surveillance video reflects that Mr. Rollins—dressed in black Croc-style shoes, white socks, black Nike sweatpants, a light or cream-colored hoodie, a black face mask and black gloves approached the ATM prior to the bombing.

*Figure 2*



Mr. Rollins' hood is cinched to obscure his face.   In his hands, Mr. Rollins was carrying a red-and-white striped tube which appears to be a homemade explosive device.

*Figure 3*



3

Mr. Rollins placed the device, lit it, and walked away before it exploded.

### *The 4:30 AM Bombing at Truist Bank, 2360 Washington Place NE, Washington, D.C.*

Thirty-seven minutes later, at approximately at approximately 4:30 AM, Mr. Rollins placed and detonated a second device outside of a Truist Bank at 2360 Washington Place NE, destroying the vestibule and structure surrounding multiple ATMs.[1]



*Figure 4*



This block, next to the Rhode Island Avenue Metro Station, includes both commercial businesses on the first floor, as well as multiple apartment buildings.   Surveillance video reflects that Mr. Rollins—dressed exactly as he was when he placed the first bomb—stepped out of the passenger seat of the metallic sedan and approached the bank.   He then placed a device consistent in

---

[1] This location is approximately nine miles from the first bombing and, during normal traffic conditions at legal speeds it would take a car approximately thirty-five minutes to drive that distance.

appearance with the first bomb, lit it, and fled the area in the same sedan, which also contained Mr. Bragg.

*Figures 5 and 6*





At the time of the bombing a woman was seated on the same block as the explosion.   The vehicle carrying Mr. Rollins, in which Mr. Bragg was either a passenger or driving, passed this woman before he placed the explosive device.   She was fortunately not harmed.

### *The 4:36 AM Bombing at the Nike Store at 700 H Street NE, Washington, D.C.*

Six minutes later, at approximately 4:36 AM, a third device was placed and detonated outside of the Nike Store at 700 H Street NE, destroying the front vestibule.[2]

*Figure 7*



Surveillance video reflects that a metallic sedan approached the store, drove past it, made a U-turn, before stopping next to the store.   Mr. Rollins then stepped out of the vehicle, rounded the corner, ducked into the entryway of the store, and then ran back to the vehicle.

---

[2] This location is approximately 2.5 miles from the first bombing and, during normal traffic conditions at legal speeds it would take a car approximately fifteen minutes to drive that distance.   In the middle of the night with little traffic and at higher speeds it would take less time.

*Figures 8 and 9*



Shortly after, a device detonates, shattering windows in the store's vestibule.   Mr. Rollins

climbed back into the car and the vehicle fled along with Mr. Bragg.

### *The 4:44 AM Bombing of the Safeway at 322 40th Street NW, Washington, D.C.*

Eight minutes later, at approximately 4:44 AM, a fourth device was placed and detonated

outside of a Safeway at 322 40th Street NE.[3]

---

[3]  This location is approximately 2.5 miles from the first bombing and, during normal traffic
conditions at legal speeds it would take a car approximately ten minutes to drive that distance.
In the middle of the night with little traffic and at higher speeds it would take less time.

*Figure 10*



Surveillance video reflects that Mr. Rollins approached the front of the Safeway, lit a device consistent in appearance with the other three devices, and tossed it into the entryway.

*Figures 11 and 12*





The device exploded damaging the entryway doors and fixtures.   Employees were present inside the store cleaning and preparing for the store to open.   Indeed, one employee was standing just on the other side of the vestibule at the time of the explosion.   Fortuitously, no one was harmed.

### *The Bombing Vehicle*

The metallic Acura sedan used in the bombing bore Maryland license plate 17971CK. That license plate was provided by the state of Maryland to a private company that is authorized to sell titling papers and license plates but has never been registered to a vehicle.   Despite concerted law enforcement efforts to locate the vehicle, the vehicle has not been seen since the morning of July 2, 2023.   Since the offense, this license plate has been placed on other vehicles, including a gray Dodge Durango that was used to rob an ATM from a 7-Eleven in Crofton, Maryland.[4]

---

[4] In that robbery, a crew that appeared to be trained or experienced used a mechanical tool to remove the money from the ATM before fleeing in the Durango.   The same group then drove to a 7-Eleven in Hyattsville, Maryland and robbed an ATM there in a similar manner.   A gray Dodge Durango with a different license plate was subsequently used in multiple similar robberies around the DMV area of ATMs.   In each, a crew of apparently trained individuals used mechanical or hydraulic tools to force open ATMs before fleeing.

### The Explosive Devices

*Figures 13 and 14*



ATF Certified Explosives Specialists identified and collected the remnants of the suspected explosive devices at each of the four bombing locations.   Analysis of the remnants indicates that similar devices exploded at each scene.   Based on their analysis of the remnants on scene, as well as reviewing the damage to each building and surveillance footage of the devices and their explosions, ATF specialists identified these devices as homemade carboard encased explosive devices.   Devices such as these are generally created by filling a cardboard or other tubing with potassium chloride or potassium chloride and aluminum.   These components are referred to colloquially as flash powder.   Flash powder is an explosive regulated by the ATF. Devices like these are not commercially manufactured or otherwise available for the public to purchase.   Such devices are often referred to as "quarter" or "half sticks," though they are not technically dynamite.   In their smallest form these devices are often referred to as M80s.   These

10

devices, however, appear significantly larger.   When ATF has recovered devices of similar size, they have contained approximately four pounds of flash powder.   The legal limit for possessing flash powder is fifty milligrams.[5]

### *The Identification of Mr. Bragg*

Law enforcement obtained search warrants for the cellular towers associated with the four bombing locations on the date and approximate times of the bombings.   A device associated with Mr. Bragg was one of just four devices that were all in the vicinity of three of the four bombing locations.[6]   One of the other devices was identified as belonging to Mr. Rollins.

Specifically, one of the devices was registered to an Apple account in the name "Garrett Bragg" with the email address "Dirtgangrico202@gmail.com" Law enforcement subsequently received records from Apple for this account.   The account contained numerous photographs, including many "selfie-style" photographs of an individual who appears to be Garret Bragg.

---

[5] 4 pounds of flash powder is equivalent to 1,814,368 milligrams.   In other words, these devices were likely around 36,000 times the legal limit.

[6] The only bombing location at which this device did not appear was at the Nike Store bombing location.   It is possible that given the relatively short amount of time the suspects spent at the Nike Store and given the relatively short distance between the Truist Bank Bombing, the Nike Store, and the Safeway, the device simply did not ping on towers servicing the Nike Store.

*Figures 15, 16, and 17*



The account also contained photographs of Mr. Bragg's license plate (front and back)

*Figures 18 and 19*





Additionally, the account included images of the bombing vehicle, complete with its license plate, dated June 21, 2023, approximately two weeks before the bombings.

*Figures 20 and 21*



The account included photographs of both the exterior of the vehicle, and the interior, including of the odometer, suggesting that this vehicle belonged to the individual (Bragg) taking these photographs.   The Apple account also reflected messages identifying the user as Garrett or Garrett Bragg.   Further, the account included messages between Bragg and Rollins on July 2, 2023, discussing obtaining tools to remove the rims of an Acura vehicle.

13

### *The September 29, 2023 Search Warrant of Mr. Rollins' Residence and Storage Unit*

In the course of this investigation, law enforcement became aware of a storage unit that was potentially linked to this offense, located at the Self-Storage Plus at 1325 Kenilworth Avenue, NE.   While the unit was registered under a different name, records reflect multiple communications between Bragg and the listed owner, and the unit's records list the owner's email address as Bragg's email address (dirtgangrico202@gmail.com). Law enforcement obtained access records and surveillance video for the storage unit.   Video reflects that Bragg regularly accessed the unit.

The records and video also reflect that on July 1, 2023, several hours before the bombing at 6:30 PM, Mr. Rollins accessed the storage unit.

*Figures 22 and 23*



At the time he accessed the unit, Mr. Rollins is wearing the same pants, socks, and shoes as the individual who placed and ignited the explosive devices several hours later.

*Figures 22 and 23*



Surveillance video reflects that Mr. Rollins returned to the storage unit at approximately 9:00 AM on July 2, 2023, less than five hours after the last bomb was detonated.

Law enforcement conducted surveillance on locations associated with Mr. Bragg and Mr. Rollins device.   The devices were tracked to a home at 1635 U Street Southeast.[7]   On September 29, 2023, law enforcement executed a search warrant of that residence.   Inside the home, law enforcement found both Mr. Bragg and Mr. Rollins.

When law enforcement announced themselves and entered the home, in an attempt to escape, Mr. Bragg exited a window and went onto the roof.   Mr. Bragg then jumped two stories

---

[7] Notably, based on metadata and surrounding buildings, this is where the photographs of the bombing vehicle that were in Bragg's iCloud account were taken.

to the ground, breaking a leg, but still attempted to continue running before he was apprehended by law enforcement.   In the home, law enforcement found the device associated with Mr. Rollins, and the device associated with Mr. Bragg.   Mr. Bragg's device had been smashed in an apparent attempt to destroy it.

*Figures 24 and 25*



Additionally, law enforcement recovered a firearm on the porch, an extended magazine in the home, a bag of key fobs, a device that can be used for reprogramming key fobs to steal vehicles, and a backpack of burglary tools including headlamps, handheld radios, and hand tools. Mr. Bragg's iCloud records reflect that he had directed a girlfriend of his to purchase identical devices such as the device for reprogramming key fobs, from Amazon for him.   While Mr. Rollins waited outside during the search warrant, a law enforcement officer offered to provide him with shoes.   Rollins indicated that he had a bunch of shoes in the living room.   Among the

shoes in the living room was a pair of black Crocs consistent with those used during the bombings.

Law enforcement also conducted a search of the storage unit which was associated with Mr. Bragg and Mr. Rollins.   Law enforcement recovered thirty-eight license plates, thousands of rounds of different ammunition (weighing more than two-hundred pounds), and additional burglary tools.   Of the thirty-eight license plates, many were involved in other crimes in the area.

Following his attempt to flee the residential search warrant, Mr. Bragg was hospitalized. At the time of the search warrant, Mr. Bragg was the subject of an extraditable warrant from St. Mary's County Maryland for Burglary.   Law enforcement spoke with Mr. Bragg in the hospital. During those conversations, Mr. Bragg indicated that he was aware of the open warrant for his arrest but was intentionally evading that warrant.   Mr. Bragg was also informed that he was a subject of a separate investigation (specifically this investigation).   Mr. Bragg was released from the hospital, but for some reason, was not properly detained as a fugitive and was released into the community.

On October 12, 2023, Bragg and Rollins were indicted on four separate counts for the Malicious Use of Explosive Materials in violation of 18 U.S.C. § 844(i), and warrants were issued for their arrest.   Law enforcement attempted to find Mr. Bragg for weeks, but Mr. Bragg did not maintain any stable residence.   Law enforcement spoke to Mr. Bragg's family members, girlfriend, and the mother of his child, directing them to speak to Mr. Bragg and encourage him to turn himself in on his two open warrants.   Mr. Bragg did not.   In its efforts to find Mr. Bragg, the Government contacted his doctors who had treated his leg injury.   Mr. Bragg provided his

girlfriend's phone number and address to his doctors but did not appear to be residing at his girlfriend's address.   After more than two months of attempting to locate Mr. Bragg, law enforcement finally found him on December 14, 2023 in a residence in Temple Hills, Maryland. Initially, individuals inside the residence, including Mr. Bragg's girlfriend, denied knowing where Mr. Bragg was.   Mr. Bragg was ultimately found concealed in the attic.   Inside the home, law enforcement found four handguns, and three machine-gun style firearms.   One of the firearms was in the room where Bragg was apparently residing.

Mr. Bragg was initially detained in Maryland based on his open warrant there.   He was writted into D.C. on January 31, 2024, for his initial appearance.   At that hearing, the Government indicated that it sought Mr. Bragg's detention.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).   "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"   *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

In determining whether any condition or combinations of conditions will assure the appearance of a defendant or safety of the community, the Court weighs four factors:   (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

18

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.  *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community or ensure Mr. Bragg's appearance were he to be released.

## I.     **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

As an initial matter, the crimes for which Mr. Bragg has been indicted by a grand jury are incredibly serious.  Mr. Bragg faces a mandatory minimum of five years' imprisonment for these charges, and a maximum of twenty years' imprisonment for each charge.

Mr. Bragg and his conspirators set and detonated four explosive devices in Maryland and D.C. in a chilling and dangerous late-night escapade.  They did so without concern for the damage it would do to those businesses or the extreme threat to human life each device posed.

After planting the first bomb, and witnessing its destructive power, Mr. Bragg drove to Truist bank.   Bragg and his accomplice drove past the bank and turned back around.   As they did, they drove past a woman sitting on the sidewalk, their headlights illuminating her from just a car-length away.   Despite this, Mr. Bragg's conspirator planted a bomb just down the block from this woman.   He did so despite the many businesses in the area which could have employees reporting to open for the day.   He did so despite the many residential apartments surrounding this bank. He planted and lit this bomb without hesitation for the property and lives he might destroy.   Mr. Bragg did not object.   Instead, he continued his rampage with Mr. Rollins.

After watching this second device detonate and cause significant damage, Mr. Bragg and his accomplices drove to the Nike Store on H Street NE.   The H Street corridor is a heavily trafficked stretch of bars and restaurants.   At that time, even at that hour, they passed multiple cars and people on the sidewalk.   Undeterred by the possibility of the loss of human life, Mr. Bragg and his conspirators planted and ignited a third device.

Mr. Bragg's rampage continued.   He and his accomplices drove to a Safeway.   The lights in that Safeway were illuminated because its employees were already at work inside the store preparing it for customers.   At this final location, Mr. Rollins (apparently aware that there were people inside) did not carefully place the device in front of the store.   Instead, Mr. Rollins callously tossed it at the front vestibule after igniting it.   An employee was just inside the store past the vestibule when the device exploded.   It is fortuitous that neither he nor any of the other employees were injured.

It is difficult to imagine more reckless, callous, or dangerous conduct than what Mr. Bragg and his conspirators engaged in on July 2, 2023.   The nature and circumstances of this offense

weighs heavily in favor of detention.

## II.     **The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[8]   The Government's case against Mr. Bragg is very strong.

This is not a case that relies on a law enforcement identification or the possibly fleeting memory of a witness.   It is a case built on cell-site location data and surveillance video establishing that Mr. Bragg was in the vehicle transporting Mr. Rollins from bombing site to bombing site.   A device associated with Mr. Bragg—using his name, his email, with multiple pictures of him and his documents—was at the location of three of four of these bombings.   That alone is telling given the time of night, the distance between these locations, and the lack of any relationship between these locations.   Put differently, the odds of Mr. Bragg in the middle of the night traveling the exact same route as the bombers at the exact same time are impossibly miniscule.   The Government will prove that this device belonged to Mr. Bragg not just based on records from the device, but from his physical proximity to that device at the time his residence was searched, as well as his proximity to Mr. Rollins device that also was at the location of three

---

[8] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8.   Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."   *Id.* at *10.   In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision.   *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).   The Second Circuit reached the same decision after a thorough and careful analysis of the issue.   *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

of four of the bombings.[9]

This cell-site location data is further corroborated by images of the bombing vehicle in Mr. Bragg's iCloud account and messages exchanged between Bragg and Rollins discussing removing the rims on an Acura, the same model as the bombing vehicle.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."  *Blackson*, 2023 WL 1778194, at *10.   This is such a case, particularly given the significant penalties Mr. Bragg faces.

### III.    The Defendant's History and Characteristics Merit Detention.

While Mr. Bragg's criminal history is somewhat limited, he has a recent and consistent history of intentionally evading law enforcement and ignoring court-issued warrants for his arrest.

At the time Mr. Bragg engaged in this bombing spree, there was already an active warrant for his arrest.   In the months that warrant was active, Mr. Bragg successfully managed to evade law enforcement detection.   And even after he was investigated and charged in this case, Mr. Bragg continued to successfully evade law enforcement for more than two months. His ability and sheer willpower to evade law enforcement is almost admirable.   Few would have the determination to jump off a second story roof, break a leg, and yet still continue trying to run from law enforcement.   And Mr. Bragg did so when he was wanted in only one jurisdiction.

---

[9]  The Government also anticipates conducting a full analysis of the cell-site location data to establish patterns of travel consistent with Mr. Rollins' known locations.

Now he has active and serious pending cases in two.

Mr. Bragg uses others to obscure his identity, making him incredibly difficult to locate. He does not order his own tools of crime for himself, relying on others.   He maintains a storage unit containing pounds of ammunition, dozens of license plates that can be used to obscure the vehicles in which he drives, and tools for stealing vehicles.   But he does not maintain that storage unit in his name, using another's identity to protect him.   He does not maintain a stable residence, instead listing the residences of others.   And he appears readily able to find those who will harbor him as well as locate illegal firearms.

Mr. Bragg's access to illegal implements and firearms indicates he is a danger.   His past history of theft and burglary, coupled with his stockpiling of tools used for theft and burglary, are alarming.   And his more recent history of successfully and intentionally evading law enforcement render him a flight risk.

## IV.   **Mr. Bragg Presents a Danger to Our Community and a Risk of Flight**

The fourth and final factor, danger to any person or the community posed by Mr. Bragg's release, similarly weighs in favor of detention.

Mr. Bragg has access to sophisticated devices used to steal cars, tools used to obscure his identity, and explosive devices.   He has no compulsion about using them.   Indeed, he used multiple of these explosive devices to damage commercial buildings without regard to the damage or potential threat to human life.   He is now facing a significant mandatory minimum and charges in a different jurisdiction.   There is little doubt that Mr. Bragg will use his experience if released to flee the jurisdiction and mask his identity.   Mr. Bragg presents a danger to our community and a risk of flight and should be detained pending trial.

**CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain

Mr. Bragg pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:      /s/ Cameron A. Tepfer
        Cameron A. Tepfer
        D.C. Bar No. 1660476
        Assistant United States Attorney
        601 D Street NW
        Washington, D.C. 20530
        202-258-3515
        Cameron.Tepfer@usdoj.gov